UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
TROY JENNINGS,                     )
                                   )
         Plaintiff,                )
                                   )
    v.                             )  Civil Action No. 08-1475 (PLF)
                                   )
FEDERAL BUREAU OF PRISONS, *et al.*,  )
                                   )
         Defendants.               )
_____)

OPINION

This matter is before the Court on defendants' motion to dismiss and plaintiff's motion for summary judgment. For the reasons discussed herein, the Court will grant the former and deny the latter.

I.   BACKGROUND

Plaintiff submits his pleading on a preprinted form and attaches to it a typewritten statement and hundreds of pages of unnumbered exhibits which appear to have been assembled in no particular order. The Court has waded through this pleading and its attachments (which together it will refer to as the complaint) and discerns claims for injunctive relief and monetary damages under the Privacy Act, *see* 5 U.S.C. § 552a, against the Federal Bureau of Prisons ("BOP") arising from its alleged willful and intentional failure to maintain accurate, timely and complete records pertaining to plaintiff.[1]  Specifically, plaintiff challenges his security and

---

[1] The Court previously dismissed the United States Probation Office in Brooklyn, New York, and the Clerk's Office of the United States District Court for the Eastern District of
(continued...)

custody classification point scores and the accuracy of the information on which they are based. *See generally* Compl. The BOP's reliance on such inaccurate information, plaintiff alleges, has made him ineligible for higher paying work assignments while in prison, *see id.* at 9, 13 (page numbers designated by the Court), has prevented him from accruing the maximum amount of good time credit allowed, *see id.* at 10, and has resulted in his designation to a penitentiary rather than to a lower security level facility, *see id*. at 10, 11, 13. For these alleged violations of his rights under the Privacy Act, plaintiff seeks an award of $250 million in damages. *See id.* at 18 (Relief).[2]

### A. Inmate Central File

An Inmate Central File contains, among other things, an inmate's presentence investigation report ("PSI"), his custody classification form, and his security designation form.

---

[1](...continued)
New York as party defendants. *See Jennings v. Fed. Bureau of Prisons*, No. 08-1475 (PLF) (D.D.C. Aug. 26, 2008). This action proceeds under the Privacy Act against the United States Department of Justice and its component, the Federal Bureau of Prisons. *See id.*

[2]     Plaintiff previously tried to obtain an award of monetary damages for the BOP's alleged error in determining his security classification. While incarcerated at the United States Penitentiary in Pollock, Louisiana, plaintiff filed a complaint in the United States District Court for the Western District of Louisiana alleging that various BOP personnel and others erred in calculating his security custody classification. *See Jennings v. Fed. Bureau of Prisons*, No. 08-1190, 2009 WL 195875, at *1 (W.D. La. Jan. 8, 2009) (Report and Recommendation). The Magistrate Judge recommended dismissal of the complaint with prejudice for failure to state a claim upon which relief can be granted because an inmate has no protectable liberty interest in his prison classification. *See id.* at *3 (citations omitted). "[A]bsent an abuse of discretion, . . . a federal court may not interfere with administrative determinations regarding custodial classifications of inmates." *Id.* The Report and Recommendation was adopted and the case was dismissed with prejudice, and plaintiff's appeal is pending before the United States Court of Appeals for the Fifth Circuit. *See Jennings v. Fed. Bureau of Prisons*, No. 08-1190 (W.D. La. Jan. 23, 2009) (Judgment), *appeal docketed*, No. 09-30189 (5th Cir. Mar. 18, 2009).

*See* Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files (12/31/1997) ("P.S. 5800.11") ¶¶ 8-9.  "Custody classification is "[t]he review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment."  Program Statement 5100.08, Inmate Security Designation and Custody Classification (9/12/2006) ("P.S. 5100.08") , ch. 2, p. 2; *see id.*, ch. 6, p. 1.

"A custody level (i.e., COMMUNITY, OUT, IN, and MAXIMUM) dictates the degree of staff supervision required for an individual inmate."  P.S. 5100.08, ch. 2, p. 2.  The term "security level" describes:

> the structural variables and inmate-to-staff ratio provided at the various types of [BOP] institutions . . . [and] identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

*Id.*, ch. 2, p. 5.  "[BOP] institutions are classified into one of five security levels: **MINIMUM**, **LOW**, **MEDIUM**, **HIGH**, and **ADMINISTRATIVE** based on the level of security and staff supervision the institution is able to provide."  *Id.*, ch. 1, p. 1 (bold type in original).  Both security designation and custody classification take into account the severity of an inmate's current offense, history of violence, history of escape, and education level, among other factors.  *See generally* P.S. 5100.08, ch. 4, 6.

### B.  Severity of Current Offense

"On March 20, 2003, . . . Troy Jennings [and a co-defendant] were convicted, after a jury trial, of various robbery, conspiracy, and weapons charges that arose out of their

participation in a string of robberies at several post offices and a laundromat." *United States v. Angelo*, 87 Fed. Appx. 205 (2d Cir. 2004). Plaintiff was sentenced to a term of 110 months' incarceration, *see* Compl., Ex. (excerpt from Judgment in a Criminal Case, Case No. 02-CR-743), and initially was designated to the United States Penitentiary in Lewisburg, Pennsylvania in September 2003. *See* Defs.' Opp'n to Pl.'s Defective Mot. for Summ. J. ("Defs.' Opp'n"), Ex. A (Public Information Inmate Data as of 11-14-2008) at 1. He currently is incarcerated at the United States Penitentiary in Allenwood, Pennsylvania. He is considered a high security inmate. *See* Pl.'s Reply to Mot. to be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted ("Pl.'s Opp'n"), Ex. (Male Custody Classification Form dated 11-08-2008); Defs.' Opp'n, Ex. B ("Zerr Decl.") ¶ 16.

For purposes of classification, "the current offense is the most severe documented instant offense behavior <u>regardless of the conviction offense</u>." P.S. 5100.08, ch. 2, p. 2 (emphasis added). If an inmate has been convicted of multiple offenses, "the highest score will be used in scoring the current offense." *Id.*, ch. 4, p. 7; *see id.*, ch. 6, p. 3. Assault (serious bodily injury intended), kidnaping (abduction or lawful restraint) and weapons (brandishing or threatening use of a weapon) fall into the "greatest severity" category and are scored seven points. *Id.*, App. A (Offense Severity Scale), p. 1.

Plaintiff alleges that he "was never convicted or arrested or indicted for taking hostages," and the BOP's assessment of points for such behavior "raised [his] custody security classification point level, Compl. at 10, resulting in his designation to a penitentiary. Plaintiff's "instant offense conduct is described in the PSI and noted on his security designation data form

as involving a gun and hostages." Zerr Decl. ¶ 12. BOP staff score a robbery offense as "a greatest severity offense which is assessed seven points on the custody classification form." *Id.*

### C. History of Violence

The security designation form and custody classification form are prepared after having determined an inmate's history of criminal violence. *See* P.S. 5100.08 ch. 4, p. 9; *see id.*, ch. 6, pp. 6-7. Relevant to the assessment of history of violence points is plaintiff's March 21, 2001 arrest, and the PSI describes plaintiff's behavior as follows:

> [T]he [plaintiff] punched Meko Dildy in the head and face and demanded his money. The [plaintiff] then threw Dildy on the ground and stole his wallet and 2 crack pipes. The [plaintiff] was subsequently arrested and charged with [criminal possession of a controlled substance]. A certificate of disposition indicates that on December 13, 2001, the [plaintiff] was sentenced to 1 year custody.

Compl., Ex. (excerpt from PSI). Plaintiff maintains that his conviction was a drug offense, not an assault, and, accordingly, there was no finding of guilt for violent behavior to warrant the award of points for a minor history of violence. *See* Compl. at 14-15.

Points are assessed "considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation)." P.S. 5100.08 ch. 4, p. 9; *see id.*, ch. 6, p. 6. "History of [v]iolence points combine both seriousness and recency of prior violent incidents to assess the propensity for future violence," and, to this end, the "[s]everity of violence is determined by the offense behavior <u>regardless of the conviction/finding of guilt offense</u>." P.S. 5100.08 ch. 4, p. 9 (emphasis added); *see id.*, ch. 6, p. 7. "Aggressive or intimidating behavior which is not likely to cause serious bodily harm or death (e.g., simple assault, fights, domestic disputes, etc.)" is considered minor

violence. P.S. 5100.08 ch. 4, p. 9; *see id.*, ch. 6, p. 7. The score is three points for minor violence which occurred five to ten years earlier. P.S. 5100.08 ch. 4, p. 9. In contrast, "[a]ggressive or intimidating behavior which is likely to cause serious bodily harm or death," such as aggravated assault or intimidation involving a weapon, is considered serious. P.S. 5100.08 ch. 4, p. 10; *see id.*, ch. 6, p. 7. The score is seven points for serious violence which occurred less than five years earlier. P.S. 5100.08, ch. 4, p. 9; *see id.*, ch. 6, p. 7.

The BOP's records reflect that plaintiff's history of violence scoring "relates to a prior offense involving a victim being punched as his current offense involving a gun and hostages." Zerr Decl. ¶ 11. The "security designation data form, originating in May 2003, reflected a minor history of violence occurring less than five years" prior, that is, plaintiff's May 21, 2001 arrest after having "punched the victim in the head and face . . ., and [having thrown] the victim to the ground[.]" *Id.* Accordingly, BOP staff assessed plaintiff three points for a minor history of violence. *Id.* The remaining seven points were assessed based on the current offenses of conviction, which involve guns and hostages. *See id.* ¶¶ 11-12.

### D. Escape

Plaintiff alleges that he "was never convicted or arrested or indicted for escape," yet BOP staff assessed points for this conduct. *See* Compl. at 11. As long as the BOP's records reflect an escape, plaintiff alleges, he "couldn't receive a high paying job" and the charge "raised [his] custody classification level and custody summary points." *Id.* at 3. The escape charge, then, is "used adversely . . . to keep [plaintiff] lock[ed] up in a maximum security federal prison and stop[s] [him] from transferring to a medium [security facility]." *Id.*

"[O]nly those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation)" are scored as escape history. P.S. 5100.08, ch. 4, p. 10. "Fleeing or Eluding Arrest, Failure to Appear for traffic violations, Absconding, runaways from foster homes and similar behavior should not to be scored under the Escape History item[.]" *Id.*, ch. 4, pp. 10-11; *see id.*, ch. 6, p. 6.

Defendants represent that plaintiff's "PSI notes a resisting arrest charge in 1990," which is presumed to be "the offense used to enter the classification on the security designation form." Zerr Decl. ¶ 13. The custody classification form now "has been corrected to reflect no escape history" because "resisting arrest should not be scored as an escape history item." *Id.*

### E. Educational Level

According to plaintiff, the custody classification form prepared by BOP staff upon his entry in 2003 failed to award him the appropriate number of points for the educational level category, contrary to his PSI which correctly reflects that he earned a GED in 1977. *See* Compl. at 9, 12-14; *see id.* (excerpt from PSI). Points for education are awarded as follows:

> 0 =   Verified High School Degree/GED
> 1 =   Enrolled in and making satisfactory progress in GED Program
> 2 =   No verified High School Degree/GED & not participating in GED Program.

*See* P.S. 5100.08, ch. 4, p. 13; *see id.*, ch. 6, p. 8.

The scoring affected plaintiff in two ways. First, it rendered plaintiff ineligible "to be considered for a commissary work assignment above minimum pay level, an institution work assignment above grade 4 compensation." Program Statement 5350.28, Literacy Program (GED

7

Standard) (12/1/2003) § 544.74 a.(2); *see* Compl. at 9, 13.  Second, the scoring affected the rate at which plaintiff earned good time credit.  *See* Compl. at 10.  Under Program Statement 5884.03, Good Conduct Time Under the Prison Litigation Reform Act (3/31/2006), "an inmate . . . is to earn up to the full 54 days credit for [good conduct time] . . . if [he] has earned or is making satisfactory progress toward earning a GED credential."  *Id.* ¶ 7.b.  An inmate who neither has earned nor is making satisfactory progress toward earning a GED credential, however, "is to earn up to 42 days credit for [good conduct time] per year."  *Id.* ¶ 7.c.  "If an inmate's status changes from GED UNSAT (unsatisfactory progress) to GED SAT (satisfactory progress), the annual rate of GCT will return to 54 days.  *Id.* ¶ 7.d.

From June 5, 2006 through June 4, 2007, plaintiff "was only eligible to earn 42 days as he voluntarily withdrew from the GED program on July 24, 2006."  Zerr Decl. ¶ 10.  At that time, Sentry, the BOP's internal inmate database, reflected that plaintiff had neither a high school diploma nor a GED.  *See id.*  When plaintiff arrived at USP Pollock, staff verified that the custody classification form's "educational level category reflected zero points which would indicate that [plaintiff] possessed a high school diploma or GED, however Sentry, the BOP's internal inmate database, indicated that he did not."  *Id.* ¶ 7.  Rather, Sentry "reflect[ed] that plaintiff "was enrolled in the BOP's GED program from 2004, making satisfactory progress, until he voluntarily withdrew in 2006."  *Id.*  At that point, staff "updated his custody classification form to reflect two points indicating that he did not have a verified high school or GED credential, nor was he enrolled in the BOP's GED program, making satisfactory progress in the program."  *Id.*  When plaintiff "notified staff that his educational level was inaccurate," staff "verif[ied] that he had earned his GED as indicated in his PSI."  *Id.* ¶ 8.  "Once his educational

information was verified, staff updated the information in Sentry on February 6, 2008 . . . [and] updated [plaintiff's] custody classification form to reflect zero points." *Id.*

Plaintiff had earned 54 days of good conduct time each calendar year since 2003, except for the calendar year from June 5, 2006, through June 4, 2007, due to his voluntary withdrawal from the GED program on June 24, 2006. Zerr Decl. ¶ 10. During that year, plaintiff was eligible to earn 42 days of good conduct time. *Id.* When staff "updated his educational level status with verified GED on February 6, 2008, during the next calendar year, [he] began earning 54 days of good time credit again." *Id.*

## II.  DISCUSSION

### A.  The BOP's Inmate Central Records System is Exempt from the Amendment and Damages Provisions of the Privacy Act

Subsection (e)(5) of the Privacy Act requires that an agency:

> maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as to assure fairness to the individual in the determination.

5 U.S.C. § 552a(e)(5). An individual may access an agency's records or information in a system of records pertaining to him, and may request amendment of records pertaining to him. *See* 5 U.S.C. § 552a(d). In addition, he may file a civil action against an agency which refuses to amend its records upon request or fails to maintain its records with the requisite level of accuracy and completeness. *See* 5 U.S.C. § 552a(g); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992) (stating that subsection (g) provides civil remedies for violations of subsection

(e)(5)).³  In a civil suit filed under subsection (g)(1)(C), if the Court determines that the agency's actions were willful or intentional, the Court may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, and further may award costs of the action and attorney fees.  5 U.S.C. § 552a(g)(4).

Notwithstanding the relief ostensibly available under the Privacy Act, an agency's Director may promulgate regulations to exempt any system of records within the agency from any part of the Privacy Act, *except* subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, regulations have been promulgated which exempt the BOP's Inmate Central Records System (JUSTICE/BOP-005), among other systems of records, from subsections (d) and (g) of the Privacy Act.  *See* 28 C.F.R. § 16.97(a)(1), (4).

---

      ³     In relevant part, subsection (g) authorizes an individual to file a civil action whenever any agency "makes a determination . . . not to amend an individual's record in accordance with his request."  5 U.S.C. § 552a(g)(1)(A).  In addition, subsection (g) provides for the filing of a civil action whenever an agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).

Insofar as plaintiff demands amendment of any record maintained in the Inmate Central Files system, that is, amendment of the PSI, custody classification form, or security designation form, this relief therefore is unavailable. *See White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam) (concluding that the Privacy Act's amendment provision does not cover amendment of a PSI); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam) (denying injunctive relief on the ground that regulations exempt BOP records, including allegedly false medical records, from amendment provision of Privacy Act); *Sellers v. Bureau of Prisons*, 959 F.2d at 309 (upholding district court's dismissal of claim for amendment of presentence investigation report under § 552(d)).

In addition, under 5 U.S.C. § 552a(j)(2), the BOP's Inmate Central Records System is exempt from subsection (e)(5) of the Privacy Act. *See* 28 C.F.R. § 16.97(j); *see also* 28 C.F.R. § 16.97(k)(2).[4] These records are exempt from the substantive provision regarding the BOP's recordkeeping obligations, effectively depriving a litigant of a remedy for any harm caused by the BOP's substandard recordkeeping. Accordingly, insofar as plaintiff seeks damages for the BOP's failure to maintain records in its Inmate Central Records System pertaining to him with the requisite level of accuracy and completeness, damages are not available. *See, e.g., Speight v. Fed. Bureau of Prisons*, No. 07-0208 (RCL), 2008 WL 3411660, at *2 (D.D.C. Aug. 11, 2008) ("[T]he Privacy Act's provision for civil action is not available for matters arising from records in [the BOP's] Inmate Central Records system, and [plaintiff] has no right of action with respect to these records."); *Clow v. Fed. Bureau of Prisons*, No. 08-1121 (ESH), 2008 WL

---

[4] The variation in language between subsections (e)(5) and (g)(1)(C) of the Privacy Act is "of no substantive significance." *Doe v. United States*, 821 F.2d 694, 698 n.10 (D.C. Cir. 1987) (en banc).

2705193, at *2 (D.D.C. July 9, 2008) (concluding that "plaintiff cannot, as a matter of law, seek amendment of the [PSI and custody classification form] based on the BOP's alleged failure to maintain accurate records" because these documents "are maintained in the Inmate Central Records System"); *see also Martinez v. Fed. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (affirming dismissal of claims against the BOP because it had exempted the Inmate Central Records system from the accuracy provision of the Privacy Act, 5 U.S.C. § 552a(e)(5)).

For the reasons just explained, the Court concludes that the complaint fails to state a claim under the Privacy Act for amendment of the PSI, custody classification form, or security designation form, or for damages arising from the BOP's alleged failure to maintain its records pertaining to plaintiff with the requisite degree of accuracy.

### B.  Plaintiff Does Not Show that the BOP Acted Willfully or Intentionally

Acknowledging that even if the Privacy Act does not allow for the amendment of BOP records, plaintiff maintains that the BOP "still [is] liable for [its] willful failure to maintain accurate information in [its] records [when it] make[s] an adverse determination against an individual as a result of this inaccurate/False information."  Compl. at 28.

In order to recover damages, "a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and, consequently, that an 'adverse' 'determination [was] made' respecting the plaintiff." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552a(g)(1)(C)); *Deters v. United States Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996); *Sellers v. Bureau of Prisons*,

959 F.2d at 312 .  Plaintiff bears the burden of proving that the agency's actions in violating the Privacy Act were intentional or willful.  5 U.S.C. § 552a(g)(4); *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984).  To meet his burden, plaintiff "must prove that the offending agency acted 'without grounds for believing [its actions] lawful' or prove that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act." *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quoting *Albright v. United States*, 732 F.2d at 189). Negligence and inadvertence do not rise to the level of intentional or willful violations of the Privacy Act.  *See Albright v. United States*, 732 F.2d at 189.

The Court has reviewed plaintiff's submissions, and has found no support for plaintiff's allegation of willful or intentional conduct on the BOP's part.  With respect to plaintiff's education level, the BOP did not transfer information from the PSI to its Sentry database to reflect that plaintiff earned a GED in 1977.  When plaintiff notified the BOP of this error, however, staff "proceeded in accordance with [P.S. 5350.28] to verify that he had earned his GED as indicated in the PSI." Zerr Decl. ¶ 8.  Once Sentry was updated, the custody classification form reflected zero points for his education level, *id.*, and on February 6, 2008, plaintiff became eligible for promotion to a position above grade 4 pay, *id.*, ¶ 9.  Similarly, the BOP promptly corrected the security classification form to reflect no escape history when staff learned that the offense on which the points were based, resisting arrest, is not considered escape for classification purposes.  *Id.* ¶ 13.

Lastly, the BOP properly assessed points for plaintiff's history of violence with respect to the March 21, 2001 arrest.  The conduct described in the PSI reflected a minor assault, that is, punching the victim in the head and face and throwing the victim to the ground, which

13

occurred less than five years prior to plaintiff's entry into the BOP.  Under P.S. 5100.08, BOP staff determined the severity of violence "by the offense behavior regardless of the conviction/finding of guilt offense."  *Id.*, ch. 4, p. 9 (emphasis added); *see id.*, ch. 6, p. 7.  Because the behavior is considered minor violence, and because it occurred between five and 10 years prior, the BOP assessed three points.  Further, with respect to plaintiff's current offenses, the BOP properly noted that guns and hostages were involved.  Under P.S. 5100.08, any robbery offense is scored as a "greatest severity" offense.  *See id.*, App. A (Offense Severity Scale) at 1.  Because the offense is considered serious, and because it occurred less than five years prior, the BOP properly assessed seven points.  The scoring was consistent with the relevant Program Statements.

       It cannot be said that the BOP acted without grounds for believing its actions lawful or that it acted in flagrant disregard of plaintiff's rights under the Privacy Act.  *See, e.g., Baptiste v. Bureau of Prisons*, 585 F. Supp. 2d 133, 135 (D.D.C. 2008) (because plaintiff's "evidence suggests at worse ordinary negligence on the part of [U.S. Immigration and Customs Enforcement] in failing to confirm the BOP's receipt of the notice [of cancellation of a detainer] allegedly faxed to the Fort Dix facility on February 8, 2006," plaintiff failed to establish causation and agency intent); *Lopez v. Huff*, 508 F. Supp. 2d 71, 77-78 (D.D.C. 2007) (concluding that the BOP did not act unlawfully or otherwise disregard prisoner's rights under the Privacy Act where BOP staff "within two weeks of plaintiff's complaint to his case manager about the alleged inaccuracies in his PSI" wrote to the USPO for "review and disposition" of plaintiff's accusations, and the USPO responded in writing).  The Court concludes that the complaint fails to state a claim under the Privacy Act for damages.

III. CONCLUSION

The Court concludes that plaintiff has failed to state claims under the Privacy Act. Accordingly, the Court will grant defendants' motion to dismiss and deny plaintiff's motion for summary judgment. An Order consistent with this Opinion will issue this same day.

DATE: September 25, 2009

/s/_____
PAUL L. FRIEDMAN
United States District Judge